Maximilian Moss, S.
The petition in this probate proceeding describes the respondent, Italia Zaini Vahante, as decedent’s * ‘ alleged widow ’ ’. The latter claims that she married decedent by proxy in a civil ceremony performed in San Mauro La Bruca, Province of Salerno, Republic of Italy, on October 26, 1950, in accordance with the laws of that republic. Decedent’s five children of a prior marriage question the performance and validity of such marriage.
A preliminary hearing was ordered on the issues so raised and proof was taken thereon. Nine documents were admitted in evidence without objection in support of the widow’s claim. Exhibit 1, in Enghsh, is an application by decedent for the issuance of an immigration visa for the widow’s entry into this country. Exhibits 2 to 9, inclusive, are certified copies of records of the Bureau of Vital Satistics of San Mauro La Bruca afore-mentioned, which were required by the Civil Code of *702 Italy for the performance of the proxy marriage in question. These documents are in Italian, translated into English and properly authenticated. They describe and identify the persons who took part in the marriage ceremony. The widow’s witnesses were cross-examined at length, but no proof controverting the marriage was offered by the contestants.
On July 14,1950 decedent executed a power of attorney before a notary public in Brooklyn, N. Y., by which he constituted and appointed his nephew, Vincenzo Valiente, son of the late Giuseppe Valiente, domiciled and residing in San Mauro (decedent’s native town), “ to represent him in the celebration of a civil marriage in the Town of San Mauro La Bruca, Province of Salerno, Republic of Italy, between himself, the said Donato Valiente, and Italia Zaini, daughter of the late Angelo Zaine and Angelina Caputo, domiciled and residing in San Mauro ” (Exhibit 9). Decedent also executed a petition to the Attorney-General of the Court of Appeals of Naples, Italy, seeking permission to marry the said Italia Zaini in San Mauro by power of attorney granted to Vincenzo Valiente for that purpose as required by article 111 of the Civil Code of Italy, which was granted by the Attorney-General pursuant thereto on September 21, 1950 (Exhibit 8). On October 26, 1950 at the town hall in San Mauro, Carmine Prisco, Mayor of San Mauro, in the presence of two named witnesses, after reading the originals of the documents above mentioned, including the authority granted to the decedent by the Attorney-General of the Court of Appeals of Naples, and noting the presence of the parties to the marriage, celebrated the marriage between decedent, represented by his attorney in fact, and Italia Zaini, reduced the proceedings to writing, caused the parties and witnesses to sign their names, subscribed his name thereto and recorded the same in the office of the Bureau of Vital Statistics (Exhibit 6).
Dr. Enrico L. Pavia, an expert on Italian law whose qualifications are not questioned, testified that he procured all of the documents marked Exhibits 2 to 9, inclusive, at the request of the widow, that he had read them before the hearing, fully knew the contents thereof and that after examining the same he was of the opinion that a valid marriage by proxy had been performed by the Mayor of San Mauro, pursuant to article 111 of the Civil Code of Italy as evidenced by Exhibit 6. On cross-examination Dr. Pavia testified that such a marriage cannot be annulled or abrogated after the death of a party thereto, citing as authority articles 127 and 125 of the Civil Code, which are in evidence.
*703 Certain objections interposed by the widow’s opponents require disposition. The objection of respondent Daniel Valenti, one of decedent’s children by his first marriage, made after all the documents were marked in evidence came too late and in addition was not within the issues. It is therefor overruled. Petitioner’s objection to the question put to the widow, “ What was the name of the man you married?”, and her answer “Donato Valiente” and all the other questions and answers which have to do with the celebration of the marriage between her and Donato Valente do not constitute personal transactions and communications with the decedent prohibited under section 347 of the Civil Practice Act. Obviously the decedent was not present at the ceremony in San Mauro. The marriage was performed through the agency of decedent’s nephew, Vincenzo Valiente, as his attorney in fact. Her testimony was not objected to on the ground that she was interested in the event. The rule harmonizing the conflicting authorities on the subject, laid down by Chief Judge Cullen in Griswold v. Hart (205 N. Y. 384, 395), requires overruling of the objection. The learned Chief Judge said: “ I think we should adopt that which excludes the testimony of an interested witness to any knowledge which he has gained by the use of his senses from the personal presence of the deceased. This construction is the one more consistent with the later decision of this court. Indeed, a very learned judge thought that the law had become * well settled ’ by the decision in the Bernsee case {supra, 141 N. Y. 389). (See opinion of Bradley, J., Ditmars v. Sackett, 92 Hun 381.) I think also it better carries out the object intended to be effected by the legislature.”
The prohibition of section 347 of the Civil Practice Act does not extend to personal transactions with the agent of a deceased person, and an interested party may testify to transactions with an agent though the principal and agent or either of them is deceased. {Pratt v. Elkins, 80 N. Y. 198: Warth v. Kastriner, 114 App. Div. 766; McCarthy v. Stanley, 151 App. Div. 358.) Furthermore, the widow’s testimony objected to is cumulative and would not affect the result even if struck out (see Matter of Bernsee, 141 N. Y. 389, 394), since the marriage as well as the identity of the parties thereto uncorroborated by her testimony are amply established by documentary evidence. {Layton v. Kraft, 111 App. Div. 842, 846; People v. Snyder, 41 N. Y. 397, 403; Hatcher v. Rocheleau, 18 N. Y. 86, 92; Young v. Shulenberg, 165 N. Y. 385.) Moreover, the objections to the testimony were expressly waived on the record.
*704 When the marriage in question was performed the decedent was a widower and Italia Zaini was single. They were not related by blood or affinity. Cohabitation was not required to validate the marriage under the law of Italy.
The only question remaining is: Does the law of New York State recognize a proxy marriage celebrated in Italy in conformity with its law? The court has studied and considered the entire body of the proof and the contentions of the parties and has reached the conclusion that decedent’s widow has sustained her claim.
The Court of Appeals of this State regards as settled law that the legality of a marriage between persons sui juris is to be determined by the law of the place where it is celebrated, unless it is repugnant to the. public policy of this State, such as marriages prohibited by positive statute and those which contravene natural law (Domestic Relations Law, § 5; Matter of May, 305 N. Y. 486, 490-491).
The Domestic Relations Law of this State provides: ‘ ‘ § 10. Marriage a civil contract. Marriage, so far as its validity in law is concerned, continues to be a civil contract, to which the consent of parties capable in law of making a contract is essential.”
Section 5 does not expressly declare void a proxy marriage celebrated in a foreign State or country. Section 12, however, provides that though no particular form or ceremony is required when a marriage is solemnized in this State, ‘ ‘ the parties must solemnly declare ”, in the presence of the authorized celebrant and attending witness or witnesses, “ that they take each other as husband and wife ”.
Though proxy marriages have never been authorized by statute in this State, they have never been considered repugnant to its public policy and do not contravene the natural law. A comprehensive annotation on proxy marriages is found in volume 170 of the American Law Reports at page 947, which in part says: ‘ ‘ There are reports of proxy marriages in ancient times, and it is certain that they were permissible in certain instances under canon law and the late Roman law. A papal decree on proxy marriages was issued about 1300 A.D. In England the canon law concerning proxy marriages was adopted in the King’s Ecclesiastical Law, and apparently this was the law of England until the adoption of the Marriage Acts in the eighteenth century. It is therefore possible, although there are no judicial decisions on the question, that the proxy marriage is a part of the common law in this country. 32 Harv, L. Rev 473.”
*705 Proxy marriages without specific sanction have been recognized in Oklahoma, Kansas, New Mexico and District of Columbia. (170 A. L. R. 947 et seq.)
The only reported case found in this State involving a proxy marriage is “ Ferraro ” v. “ Ferraro ” (192 Misc. 484). Justice Delany of the Domestic Relations Court prefaced his decision thus (p. 485): “This is a case without discovered precedent, insofar as it involves a marriage ceremony at which only one principal was personally present, and the other was represented by proxy.” The marriage was performed in Washington, D. C. It was preceded by a marriage license procured by the wife. The statute did not require the presence of either party when the license was procured or when the marriage was performed. The husband, who was represented by proxy at the marriage, was charged with failure to support his wife and child. One of the issues was the validity of the marriage. After stating the rule that the validity of the marriage was to be determined by the laws of the District of Columbia, and that those laws were complied with, the court held the marriage valid in New York. In unanimously affirming the order directing the appellant husband to support his wife and child, the Appellate Division, Second Department (275 App. Div. 777) sub nom. Fernandes v. Fernandes, said: “ Since the proxy marriage celebrated in the District of Columbia was valid in that jurisdiction both as a common-law marriage and as a marriage by proxy, the marriage must be recognized as valid in this State. ’ ’
For cases in other States holding that a foreign proxy marriage will be recognized see ‘ ‘ Recognition of foreign proxy marriages ” (Ann. 170 A. L. R. 949 et seq.).
It follows that the marriage by proxy of Italia Zaini to Donato Yalente in San Mauro La Bruca, Province of Salerno, Italy, on October 26, 1950 must be recognized in this State. Italia Zaini Yaliante is adjudged and decreed to be the lawful widow of decedent, Donato Yalente.
Settle decree on notice.